[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15465
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20352-CMA-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee
Cross Appellant,

versus

DAILIN PICO RODRIGUEZ,

Defendant - Appellant
Cross Appellee.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(November 30, 2012)

Before WILSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Dailin Pico Rodriguez appeals her convictions and concurrent 50-month sentences for two counts of making false statements in violation of 18 U.S.C. § 1001(a)(2). On appeal, Rodriguez argues that the district court: (1) erred by failing to sustain her objections to the government's comments made during closing argument; (2) improperly applied a three-level sentencing enhancement when it found her to have substantially interfered with the administration of justice; and (3) improperly applied a two-level sentencing enhancement when it found her offense was extensive in scope, planning, or preparation.

The government cross-appeals, arguing that the district court lacked jurisdiction to change Rodriguez's 50-month sentences from running consecutively to running concurrently with her undischarged term of imprisonment.

## I.  Background

On July 21, 2011, a federal grand jury indicted Rodriguez for three counts of knowingly making false statements to federal officials, in violation of 18 U.S.C. § 1001(a)(2). According to the indictment, on or about February 4, 2010, Rodriguez, an inmate in the Federal Detention Center (FDC) in Miami, knowingly

2

and falsely represented to a special agent within the Department of Justice, that her prison-issued clothing contained semen of a correctional officer who had sexually assaulted her.  On or about February 12, 2010, Rodriguez told the same story to a Federal Bureau of Investigation (FBI) special agent.  On or about February 25, 2010, Rodriguez knowingly and falsely told an FBI special agent that she had saved hair cuttings containing the semen of an FDC correctional officer who had sexually assaulted her.  When tested, the DNA matched that of Rodriguez's boyfriend.  The DNA did not match the DNA of the FDC correctional officer Rodriguez alleged had sexually assaulted her.

A jury returned a guilty verdict on all counts.  Count Two, however, was dropped; Rodriguez was only sentenced on Counts One and Three, each count carrying a 50-month sentence.

On November 15, 2011, the district court held that the current sentences would be consecutive to the undischarged term of imprisonment.  The minute entry for sentencing, however, reflected that the current sentence was to run concurrently with the undischarged term.  Rodriguez immediately filed notice of appeal.  On November 16, 2011, the district court entered an amended judgment, ordering that the 50-month sentences instead run concurrently with Rodriguez's undischarged term of imprisonment.  The district court did not issue an

3

accompanying order or opinion explaining its reasoning for entering the amended judgment.  Rodriguez again filed notice of appeal on November 18, 2011.  The government filed notice of cross-appeal on December 16, 2011.

## II.  Analysis

### A.  Rodriguez's Claims on Appeal

#### 1. *Prosecutorial Misconduct*

Rodriguez argues that the following comments made by the prosecutor in closing argument were not based on evidence and amounted to prosecutorial misconduct: (1) Rodriguez's allegations of sexual assault could have ruined the life of the accused correctional officer, and (2) because investigators spent time investigating Rodriguez's allegations, real cases were neglected.

We review claims of prosecutorial misconduct *de novo*.  *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).  To establish prosecutorial misconduct, the defendant must show both that the prosecutor's remarks were improper, and that those remarks prejudicially affected her substantial rights.  *Id.* While a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the evidence presented at trial.  *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).  "Although a prosecutor may not make an argument directed to passions or prejudices of the

jurors instead of an understanding of the facts and law, there is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence adduced at trial." *Id*. (internal citations and quotation marks omitted).  A prosecutor may argue the conclusions that the jury should draw from the evidence.  *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).

In addition to showing that the prosecutor's remarks were improper, a defendant must also show that those remarks prejudiced her substantial rights. *Eckhard*, 466 F.3d at 947.  Improper remarks prejudice the defendant's substantial rights if there is a reasonable probability that the outcome of the trial would have been different but for the remarks.  *Id*.  If "the record contains sufficient independent evidence of guilt, any error is harmless."  *Id.*

Here, the prosecutor's remarks were not improper and did not prejudice Rodriguez's substantial rights.  When the prosecutor told the jury that the agents had to spend time investigating Rodriguez's allegations and thus could not investigate real cases, the prosecutor likely intended to remind the jury of the fact that Rodriguez's lies were material and had real consequences.  Similarly, the prosecutor's comment that Rodriguez's lies could have ruined the correctional officer's life was a common-sense inference as to the likely consequences of Rodriguez's lies.  *See e.g. Bailey*, 123 F.3d at 1400; *Johns*, 734 F.2d at 663.

5

The prosecutor's comments during closing argument were not improper and did not prejudice Rodriguez's substantial rights.

## 2.  *Three-Level Enhancement*

Next, Rodriguez contends that the district court erred in determining that she substantially interfered with the administration of justice.  Specifically, Rodriguez argues that the three-level enhancement cannot apply because the government resources expended were part of the investigation into and the prosecution of her false claims.  *See United States v. Johnson*, 485 F.3d 1264, 1271 (11th Cir. 2007) (noting that "the government correctly recognized at sentencing that it could not rely on any investigative costs incurred prior to Johnson's false testimony or the expenses associated with prosecuting Johnson's underlying perjury offense.").

"We review the district court's factual findings for clear error and its application of the Guidelines *de novo*."  *United States v. Newman*, 614 F.3d 1232, 1235 (11th Cir. 2010) (internal quotation marks omitted).  Section 2J1.2(b)(2) of the Guidelines provides a three-level enhancement if the offense resulted in a "substantial interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2).  The commentary explains that substantial interference with the administration of justice includes, among other things, "the unnecessary

6

expenditure of substantial governmental or court resources." § 2J1.2 cmt. n.1.

In *United States v. Johnson*, we interpreted this commentary with regard to a perjury offense. 485 F.3d at 1271. We upheld the district court's application of a three-level enhancement under § 2J1.3(b)(2) for unnecessary expenditure of substantial government or court resources. As a result of the defendant's false grand jury testimony, the government was forced to identify and interview several other witnesses, review the defendant's records, and reconvene the grand jury, which required the government to pay travel expenses for grand jury members, prosecutors, and witnesses. *Id.* at 1272. We also held that the government need not specify the number of hours expended by government employees to sustain the enhancement. *Id.* at 1271.

In this case, the record shows the expenditure of substantial government resources that were required to investigate Rodriguez's initial claims of sexual assault. First, Rodriguez was interviewed on multiple occasions by different agents. She was moved to a different jail during the investigation. An Assistant United States Attorney had to prepare a search warrant in order to obtain DNA from the alleged perpetrator. DNA had to be collected from Rodriguez's boyfriend and her alleged attacker. Lastly, the DNA collected (pants, hair, saliva) had to be tested and analyzed. DNA testing and analysis is a time consuming and

7

expensive process.

The record reflects that these resources were spent investigating Rodriguez's allegations and identifying her alleged assailant, and thus are attributable to her criminal conduct for purposes of the Guidelines.  Rodriguez has not shown that the district court clearly erred in determining that she substantially interfered with the administration of justice by causing the unnecessary expenditure of substantial governmental resources.

### 3.  *Two-Level Enhancement*

Rodriguez contends that her offense was not extensive in scope, planning, or preparation because it involved her claiming that she had been the victim of sexual assault and because DNA analyses quickly proved that her allegations were not supported in fact.

Section § 2J1.2(b)(3)(C) provides for a two-level enhancement where the offense "was otherwise extensive in scope, planning, or preparation."  U.S.S.G. § 2J1.2(b)(3)(C).  Rodriguez's offense was "extensive in scope, planning, [and] preparation" and the district court did not err in so finding.  *See id*.

Here, the district court found Rodriguez's offense extensive in scope and planning "because [it] involve[d] a gathering together of lies and misrepresentations."  This court agrees.  It could not have been an easy task for

8

Rodriguez to obtain a semen sample from her boyfriend while he visited her in a guarded visiting room and to then use that semen in such a way that would allow her to have semen-stained pants in her cell. To further corroborate her story, Rodriguez provided her boyfriend with a sample of her hair so he could later produce her hair with a semen sample on it. Rodriguez directed agents to her boyfriend so he could give them the hair sample.

Given the constraints of incarceration, Rodriguez's offense clearly involved extensive planning and preparation and the district court did not err in awarding the two-level enhancement.

B.  Government's Cross-Appeal

In its cross-appeal, the government maintains that the district court lacked jurisdiction to amend Rodriguez's sentences. The original sentences were to run consecutively to Rodriguez's current undischarged prison term, but the district court amended the judgment so that the sentences would run concurrently.

Generally, the filing of a notice of appeal divests the district court of jurisdiction over aspects of the case involved in the appeal. *United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995). Nevertheless, the district court retains jurisdiction to correct a sentence pursuant to Rule 35(a). Fed. R. App. P. 4(b)(5).

A district court may not modify a term of imprisonment except under limited circumstances, including to the extent expressly permitted by statute or by Federal Rule of Criminal Procedure 35. 18 U.S.C. § 3582(c)(1)(B). Rule 35(a) permits district courts to correct arithmetical, technical, or other clear errors in a sentence within 14 days of sentencing. Fed. R. Crim. P. 35(a). The advisory committee note explains that the authority to correct a sentence under Rule 35(a) is intended to be very narrow and is not intended to give the court an opportunity to change its mind about the appropriateness of a sentence. Fed. R. Crim. P. 35 advisory committee's note; *see also United States v. Phillips*, 597 F.3d 1190, 1196–97, 1199, 1201 (11th Cir. 2010) (stating that the limitations of Rule 35(a) are jurisdictional in nature).

In *United States v. Lett*, we vacated a re-sentencing order where the district court's original sentence was permissible under the Guidelines and the applicable statutes. 483 F.3d 782, 791 (11th Cir. 2007). The district court initially imposed a 60-month sentence of imprisonment; 60 months was the mandatory minimum sentence. *Id.* at 785. After further reflection, however, the court determined that, under U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f), it could sentence the defendant below the statutory mandatory minimum. *Id.* at 786–87. Acting within the time limit, and purportedly under the authority provided by Rule 35(a), the district court

10

modified the defendant's sentence to below the mandatory minimum. *Id.* The government appealed the district court's amended sentence. *Id.* at 787. On appeal, this court explained that Rule 35(a) provides district courts with only "a narrow corrective power" that is limited to obvious errors. *Id.* at 788. Because the sentence originally imposed was "plainly permissible" under the Guidelines and applicable statutes, we vacated the district court's re-sentencing order and remanded with instructions to impose the original sentence. *Id.* at 788, 791.

Section 3742(b) of Title 18 authorizes the government to appeal an otherwise final sentence if that sentence was imposed "in violation of law." 18 U.S.C. § 3742(b)(1). We have explained that the legislative history and symmetrical structure of § 3742 indicate Congress's intent that the government and defendants be able to appeal sentences on the same terms. *United States v. Chavarria-Herrara*, 15 F.3d 1033, 1036 (11th Cir. 1994). We have further held that under § 3742(b), this court has jurisdiction over government appeals of a sentence reduced pursuant to Rule 35(b). *Id.*

Here, the district orally sentenced Rodriguez to two terms of 50-months imprisonment to run consecutively to her undischarged term of imprisonment. The initial sentencing order also reflects that the sentences run consecutively. On the docket sheet, the minute entry for the sentencing proceedings reads that the 50-

11

month sentences should run concurrently.  After Rodriguez initially appealed, the district court amended its sentencing order so that the two 50-month sentences would run concurrently to the undischarged prison term.  However, the district court offered no explanation as to why it amended its judgment; there appears to be no technical, arithmetical or other clear error in its original sentencing order. *See* 18 U.S.C. 3582(c)(1)(B); Fed. R. Crim. P. 35(a); *United States v. James*, 597 F.3d 1190, 1196 (11th Cir. 2010) (noting that "under Rule 35(a), a court can correct a sentence only for arithmetical, technical, or other clear error."). Consequently, the district court lacked jurisdiction to amend Rodriguez's sentences, and in the absence of an arithmetical, technical, or other clear error, her 50-month sentences should run consecutively to her current undischarged prison sentence.

Accordingly, we affirm in part, reverse in part, and remand to the district court with instructions to reinstate its original judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**